<hr />

MAURICE J. WORRELL, Petitioner-Appellee v. N.C. DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION, Respondent-Appellant

No. 9128SC479

(Filed 7 July 1992)

**Pensions § 1 (NCI3d) — State employee — purchase of credit for military service — time in Local System — statute of limitations for reduced purchase rate**

The trial court erred by reversing a final agency decision by the Board of Trustees of the Retirement System where petitioner was a contributing member of the North Carolina Local Government Employees' Retirement System from 1 October 1973 to 31 October 1977; petitioner then changed employment and became a member of the Teachers' and State Employees' Retirement System on 1 November 1977; his accumulated contribution and membership service credits in the Local System were transferred to the State System at his request on 19 March 1990; petitioner asked and was told by his supervisor that he had to be a member of the State System for ten years to purchase credits for his military service; respondent received petitioner's request to purchase credits for military service on 14 November 1988; petitioner was informed that he would have to pay full actuarial cost for the purchase because more than three years had passed since he first became eligible to make the purchase; and the trial court held that the term "membership service" does not include credits for service in the Local System that have been transferred to the State System. The controlling statute is N.C.G.S. § 135-18.1 which, when read in conjunction with N.C.G.S. § 135-1(14), clearly includes as membership service credits transferred from the Local System to the State System, so that this petitioner's credits from the Local System should be considered when

determining whether the statute of limitations has run on purchasing military service credits at a reduced rate.

**Am Jur 2d, Pensions and Retirement Funds § 1645.**

Judge COZORT dissenting.

APPEAL by defendant from order entered 8 February 1991 by *Judge Robert D. Lewis* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 12 March 1992.

Petitioner filed a petition for a contested case hearing in the Office of Administrative Hearings on 25 July 1989, seeking to purchase service credits in the Teachers' and State Employees' Retirement System of North Carolina for his military service credits at the reduced rate provided in N.C. Gen. Stat. § 135-4(f)(6). On 30 March 1990, Administrative Law Judge Fred Gilbert Morrison, Jr. recommended that petitioner be allowed to purchase his military service credit at the reduced rate.

On 26 July 1990, this contested case was heard by the Board of Trustees of the Retirement System at its regular meeting. The chairman of the Board, Harlan E. Boyles, issued a final agency decision on 3 August 1990, determining that the recommended decision was an erroneous and improper application of relevant law, failed to consider relevant provisions of law and should not be adopted. Petitioner filed for judicial review in Buncombe County Superior Court where Judge Robert D. Lewis entered an order reversing the final agency decision.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Alexander McC. Peters, for defendant-appellant.*

*Talmage Penland for plaintiff-appellee.*

JOHNSON, Judge.

Petitioner-appellee, Maurice Worrell, became a contributing member of the North Carolina Local Governmental Employees' Retirement System (hereinafter Local System), on 1 October 1973 as a result of employment with the Pender County Sheriff's Department. On 31 October 1977, petitioner left employment with Pender County and on 1 November 1977 became employed by the North Carolina Employment Security Commission. As a result of his employment with the Commission, petitioner became a member of the

Teachers' and State Employees' Retirement System of North Carolina (hereinafter State System). At petitioner's request, his accumulated contribution and membership service credits in the Local System were transferred to the State System on 19 March 1980, pursuant to N.C. Gen. Stat. § 135-18.1 (1990).

After becoming employed by the Commission, petitioner asked his supervisor when he would be eligible to purchase credits for military service pursuant to N.C. Gen. Stat. § 135-4(f)(6) (now repealed but with inchoate rights preserved). Petitioner's supervisor informed him that he had to be a member of the State System for ten years before he would be eligible to purchase the service credits.

On 14 November 1988, respondent received petitioner's request to purchase service credits for military service rendered by him from 14 August 1967 through 14 May 1971. Petitioner was informed that pursuant to N.C. Gen. Stat. § 135-4(m), he would have to pay full actuarial cost for the purchase because more than three years had lapsed since he first became eligible to make the purchase.

By Assignments of Error One and Two, the appellant contends that the trial court erred by holding that, for the purpose of determining when the three year limitation on purchasing military service credit at a reduced rate expires, the term "membership service" does not include service credits for service in the Local System that have been transferred to the State System. More specifically, the appellant contends that petitioner's service in the Local System, dating 1 October 1973 through 31 October 1977, should be deemed membership service and added to petitioner's six years of service in the State System, for the purpose of determining when ten years of membership service had been rendered and the three year limitation on purchasing credits at a reduced rate had expired.

Appellant argues that petitioner was eligible to purchase military credits at a reduced rate on 1 October 1983 (having rendered four years of local service and six years of State service, amounting to ten years of membership service) and had three years thereafter, or until 1 October 1986, to purchase the credits at the reduced rate. Because petitioner made the request to purchase the credits at the reduced rate in November of 1988, which appellant states was well beyond the three year limitation, appellant contends that petitioner must pay full actuarial cost for the credits.

Petitioner-appellee argues that the service credit in the Local System, although transferred to the State System, should not be considered in determining when the three years for purchasing credits at a reduced rate expires. Petitioner contends that he was not eligible to purchase credits until 1 November 1987, ten years after he had become a member of the State System, and that he had three years thereafter to purchase the credits at the reduced rate. We find petitioner's argument unpersuasive.

North Carolina General Statute § 135-4(f)(6), which allows the purchase of military credits at a reduced rate, states:

Notwithstanding any other provision of this Chapter, *teachers and other State employees not otherwise allowed service credit for service in the armed forces of the United States may, upon completion of 10 years of membership service, purchase such service credit* by paying in a total lump sum an amount, based on the compensation the member earned when he first entered membership and the employee contribution rate at the time, with sufficient interest added thereto so as to equal one half the cost of allowing such service, plus a fee to cover expense of handling payment to be determined by the Board of Trustees and assessed the member at the time of payment[.] (Emphasis added.)

North Carolina General Statute § 135-18.1(a) states that:

[a]ny person who becomes a member of this Retirement System on or after July 1, 1951, shall be entitled prior to his retirement to transfer to this Retirement System his credits for membership and prior service in the local system: Provided, the actual transfer of employment is made while his account in the local system is active and such person shall request the local system to transfer his accumulated contributions, interest, and service credits to this Retirement System[.]

In the case *sub judice*, petitioner-appellee became a member of the State System after 1 July 1951; therefore, N.C. Gen. Stat. § 135-18.1(a) allows his membership service in the Local System to be transferred to the State System. In addition, N.C. Gen. Stat. § 135-18.1(b) states that:

[t]he accumulated contributions withdrawn from the local system and deposited in the Retirement System . . . shall be deemed, for the purpose of computing any benefits subsequently payable

from the annuity savings fund, to be regular contributions made on the date of such deposit.

We are of the opinion that the General Assembly, in adopting N.C. Gen. Stat. § 135-18.1(b), intended that transferred service credits be treated as "membership service" and retain the same character they held in the Local System. North Carolina General Statute § 135-18.1(c) supports our opinion. The statute states that:

> [u]pon the deposit in this Retirement System of the accumulated contributions previously withdrawn from the local system the Board of Trustees of this Retirement System shall request the Board of Trustees of the local system to certify to the period of membership service credit, [local creditable service], . . . as of the date of termination of membership in the local system. *Credit shall be allowed in this System for the service so certified in determining the member's credited service, [credible service under the State System.]* (Emphasis added.)

N.C. Gen. Stat. § 135-18.1(c). We come to this conclusion in spite of the restrictive definition of membership service set out in N.C. Gen. Stat. § 135-1(14) (defining "membership service" as "service as a teacher or State employee rendered while a member of the Retirement System"). *See In re Hardy*, 294 N.C. 90, 95, 240 S.E.2d 367, 371 (1978) ("If a strict literal interpretation of the language of a statute contravenes the manifest purpose of the Legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded.").

It is a well established rule of statutory construction that when interpreting a statute, the intent of the legislature controls. *Id.; Housing Authority v. Farabee*, 284 N.C. 242, 200 S.E.2d 12 (1973). It is also well established that two statutes concerning the same subject matter must be read so as to give effect to each, *Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E.2d 78 (1969), and that if one statute deals with a subject in a "minute and definite way," and another deals with the same matter in more "general and comprehensive terms," the specific statute will control in the specific situation. *Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966).

The definition of "membership service," set out in N.C. Gen. Stat. § 135-1(14), is broad and general. North Carolina General Statute § 135-18.1, however, covers the specific matter of transfer-

ring credits from the Local System to the State System. Thus, the controlling statute in the case *sub judice* is N.C. General Statute § 135-18.1 which, when read in conjunction with N.C. Gen. Stat. § 135-1(14), must clearly include, as membership service, service credits transferred from the Local System to the State System. Once credible local service is certified to the State System, the service becomes membership service in the State Retirement System. Accordingly, we hold that when petitioner transferred his credits from the Local System, his service was certified to the State System for membership service credits, and that such credits should be considered when determining whether the statute of limitations has run on purchasing military credits at a reduced rate.

Therefore, petitioner was eligible to purchase military credits at a reduced rate on 1 October 1983, having rendered four years of service in the Local System and six years of service in the State System. Pursuant to N.C. Gen. Stat. § 135-4(m), petitioner then had three years, or until 1 October 1986, in which to purchase the military credits at the reduced rate. Petitioner sought to purchase the credits in November of 1988, well beyond the statutory time limit. The decision of the trial court is

Reversed.

Judge GREENE concurs.

Judge COZORT dissents.

Judge COZORT dissenting.

I disagree with the majority's conclusion that respondent's service credits transferred from the Local System to the State System constitute "membership service" which must be included when evaluating respondent's eligibility to purchase military credits at a reduced rate. I base my opinion on the plain meaning of the statutory provisions which apply in the case below.

N.C. Gen. Stat. § 135-4(m) (1990) imposes a three-year time limitation "after the member first becomes eligible" for any "member" who chooses to purchase the credits at a discounted price. An individual is entitled to purchase such credits upon completion of ten years of membership service. N.C. Gen. Stat. § 135-4(7) (1990). An examination of the terms "member" and "membership service"

indicates that petitioner should not have been precluded from purchasing his military credits at the lower rate on the basis of failing to make a timely request. "Member" includes "any teacher or State employee included in the membership of the System as provided in G.S. 135-3 and 135-4." N.C. Gen. Stat. § 135-1(13) (Cum. Supp. 1991). "Membership service" is defined as "service as a teacher or State employee rendered while a member of the Retirement System." N.C. Gen. Stat. § 135-1(14) (Cum. Supp. 1991). Finally, "Retirement System" means "the Teachers' and State Employees' Retirement System of North Carolina as defined in G.S. 135-2." N.C. Gen. Stat. § 135-1(22) (Cum. Supp. 1991). These terms, placed within the context of N.C. Gen. Stat. § 135-4(m) (1990), indicate that a consideration of local retirement system credits in determining the time limit for purchasing the discounted credits was excluded from the provision. No mention of local retirement credits is present anywhere in the statute. Had the legislature intended to include local retirement system credits in the calculation, then an appropriate provision could have been written into the statute.

I agree with the trial court that petitioner was not eligible until November 1987 to purchase the military credits at a reduced rate and that his request in November 1988 was timely. I vote to affirm the lower court's judgment, and I respectfully dissent.